COOPER et al. v. JOHNSON COUNTY et al.*
(No. 8816.)

(Court of Civil Appeals of Texas. Ft. Worth. Feb. 15, 1919. On Motion for Rehearing, April 5, 1919.)

1. SHERIFFS AND CONSTABLES ⬦⬦157(5)—LIABILITY ON BOND — IMPROPER PAYMENT OF GUARD HIRE.

In a county's suit against its former sheriff and bondsmen to recover moneys illegally received by the sheriff during term of office, the bondsmen were not liable for the sums paid to the sheriff in good faith by order of the commissioners' court for hire of a guard at the county jail, even though the amounts paid were not authorized by law.

On Motion for Rehearing.

2. SHERIFFS AND CONSTABLES ⬦⬦65—GUARD OF JAIL — PAYMENT OF COMPENSATION TO SHERIFF—STATUTE.

Under Code Cr. Proc. 1895, art. 1098, despite its amendments in 1909 and 1915, the sheriff of a county of less than 35,000 population is not liable for moneys paid to him during his term of office by authorization of the commissioners' court for hire of a deputy sheriff as a guard at the county jail, though there was only one deputy sheriff kept at the jail, so that the county contended he was the jailer and not a guard; the commissioners' court being unauthorized to pay the salary of a jailer.

Appeal from District Court, Johnson County; O. L. Lockett, Judge.

Suit by the county of Johnson and others against L. D. Cooper and others. From judgment for plaintiffs, defendant Cooper appeals. Judgment reversed and rendered in part, and undisturbed in part.

Johnson & Harrell and Walker & Baker, all of Cleburne, for appellant.

S. C. Padelford and J. K. Russell, both of Cleburne, for appellees.

BUCK, J. [1] Johnson county sued L. D. Cooper, former sheriff, and his bondsmen, to recover certain fees and sums of money which were alleged to have been illegally received and retained by him during his two terms of office. So far as this appeal is concerned, the amount involved is $1,050, alleged to have been paid Cooper for hire of a guard at the county jail. The trial court sustained defendant's plea of limitation as to $580 of said amount, and gave a peremptory instruction in favor of plaintiff against all defendants for $470. But before entering the judgment, the court concluded, properly we think, that the bondsmen were not liable for the sums paid to the sheriff by order of the commissioners' court for such guard hire, even though the amounts so paid were not authorized by law, and rendered judgment, on the verdict returned in obedience to the peremptory instruction, only against the defendant Cooper, who has appealed.

The evidence, without material contradiction, shows that when Cooper qualified as sheriff, he asked the county judge, J. B. Haynes, what the commissioners' court was going to do about the employment of a guard at the jail. Judge Haynes told Cooper to come before the commissioners' court, which he did. There it was explained to Cooper that the law did not authorize the commissioners' court to pay any part of the salary of a jailer, but the law did authorize the payment of $1.50 a day for a necessary guard. Cooper explained that, in order to perform the duties of his office, he was required to be on the outside a great deal of his time, and hence could not stay at the jail. The commissioners' court authorized the employment of a guard. The amounts allowed and paid out for this item during the two terms of Cooper's tenure aggregated the amount sued for. This allowance was received by Cooper and applied on the salary of the deputy sheriff who stayed at the jail and guarded, fed, and cared for the prisoners. There was no jailer, eo nomine, employed, and only one deputy sheriff stayed at the jail at any one time or period. The deputy sheriff who acted as guard or jailer at times performed other duties pertaining to his office as deputy sheriff.

---

⬦⬦For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes
*Writ of error refused, October 22, 1919.

such as serving process, waiting on the court, etc.

The contention of appellee is that as there was only, one deputy sheriff kept at the jail, he was the jailer and not a guard, and that under the law the commissioners' court could not pay the salary, or any part thereof, of a jailer. There seems to be no question as to the good faith of the commissioners' court in making the allowance, or of Cooper in receiving it. The insistence is that the court had no authority under the law to make the allowance under the circumstances, and that, therefore, Cooper is liable for the same, or such part thereof as it is not shown to be barred by limitation.

We have concluded that the instant case is controlled by the holding in the case of Ledbetter v. Dallas County, 51 Tex. Civ. App. 140, 111 S. W. 193, writ of error denied. There the facts are essentially similar to those disclosed here, and the issues here presented were there discussed fully, and the Supreme Court, by denying the writ of error, has in effect affirmed that holding. See, also, Jeff Davis County v. Davis, 192 S. W. 295, and authorities there cited.

Hence we conclude that the judgment of the lower court should be reversed in so far as it awards a recovery against Cooper, and the judgment here rendered for appellant, and that the judgment in favor of Cooper on his plea of limitation should be undisturbed; and it is so ordered.

Judgment reversed and rendered in part, and undisturbed in part.

### On Motion for Rehearing.

[2] Appellee urges that the case of Ledbetter v. Dallas County, 51 Tex. Civ. App. 140, 111 S. W. 193, cited in our original opinion, is not authority in point, because, as averred, Johnson county, according to the last United States census, has a population of less than 35,000, while Dallas county had, at the time of the decision above mentioned, more than 50,000 population. There appears to be no evidence in this case as to what the population of Johnson county was during the period from 1912 to 1916, covering Cooper's two terms of office, though the testimony of the county judge tends to show that the commissioners' court recognized the fact that the law

212 S.W.—34

made no provision for the payment by the commissioners' court of Johnson county of the jailer's salary. Nor was the question of the population of Dallas county in any way determinative of the issues in the Ledbetter decision. Moreover, article 1098, Crim. Proc., as it read at the time of this latter decision, made no distinction between counties on account of population with reference to the county's allowance for jail guards or jailer. It provided:

"The sheriff shall be allowed for each guard necessarily employed in the safe keeping of prisoners one dollar and fifty cents for each day, and there shall not be any allowance made for the board of such guard, nor shall any allowance be made for jailer or turnkey."

In 1909 this article was amended by adding to the sentence above the words, "except in counties having fifty thousand population or more." It was further provided by this amendment that in counties having 50,000 population or more the commissioners' court might allow for each jail guard $2.50 per day. This article took the number 1143. The latter article was further amended at the first called session of the Legislature of 1915 (chapter 20) by changing the minimum population of the counties authorized to pay $2.50 a day for each jail guard, from 50,000 to 40,000, and further empowering the commissioners' court in such counties to pay the jailer and turnkey $2.50 per day. Neither of these amendments, however, affects the question of the maximum allowance for jail guards in counties having less than 40,000 inhabitants, or the question of the lack of authority of the commissioners' court in such counties of less population to make an allowance for jailer or turnkey. However, we are still of the opinion that the decision in the Ledbetter Case approved by the Supreme Court by the denial of the writ of error, controls the issues presented in this case. If the questions of law involved had not been determined by the Supreme Court, there might be room for doubt as to the correctness of our former holding, but we conclude that the questions of law presented and the facts in evidence in the two cases are essentially the same, and that the law has been decided adversely to appellee's contention.

The motion for rehearing is overruled.